CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 12 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES FLETCHER, # 307692,<br>Plaintiff, | )<br>) Civil Action No. 7:04cv00374<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| WARDEN D. BRAXTON, et al.,<br>Defendants. | ) By: Jackson L. Kiser<br>) Senior U.S. District Judge |

The plaintiff, Charles Fletcher, a Virginia inmate proceeding pro se, has filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges defendants violated his First, Eighth, and Fourteenth Amendment rights and the rights afforded under Religious Land Use and Institutionalized Persons Act ("RLUIPA") by refusing to place him on the Common Fare Diet and by failing to provide him with religious materials. As relief, plaintiff seeks injunctive relief and monetary damages.

Defendants filed a motion for summary judgment. The court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised plaintiff that his failure to reply to the defendants' motion may result in summary judgment being granted for the defendants. Plaintiff filed a response to the defendants' motion, document number 19, thus, the matter is ripe for disposition.

As a threshold matter, I find that the Virginia Department of Corrections and the Red Onion State Prison are not proper parties subject to suit under 42 U.S.C. §1983. Therefore I will dismiss all claims raised against them. Additionally, after a thorough review of the record, I find that plaintiff has failed to raise any allegations of constitutional magnitude under the Eighth and Fourteenth Amendments. Accordingly, those claims must be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief may be granted. Furthermore, I am convinced that there exists

no issue of material fact regarding plaintiff's claims brought under the First Amendment and RLUIPA and that the defendants are entitled to judgment as a matter of law as to those claims.

### I.     Facts and Claims

On November 10, 2003 Fletcher applied to participate in the Common Fare Diet at Red Onion State Prison ("ROSP"). At that time Fletcher indicated that he had been a Muslim for the preceding thirteen years and that he had been on the Common Fare Diet at all the institutions in which he had been incarcerated. On December 11, 2003 the Institutional Classification Authority ("ICA") convened to review Fletcher's request. During that hearing Fletcher indicated that as of January 1, 2004, he would no longer practice Islam and would instead be converting to Judaism. Nonetheless, he wished to continue to receive the Common Fare Diet as it met the constraints of the Jewish faith. The ICA recommended that Fletcher be approved for the Common Fare Diet.

The ICA's recommendation was forwarded to Central Classification Services ("CCS") for final approval. On April 14, 2004 the CCS deferred action on Fletcher's request until he demonstrated six months participation in Jewish religious services, programs, and/or classes.

However, it is uncontested that ROSP does not offer any Jewish religious services, programs, and/or classes. All religious materials which are available at ROSP have been donated to the institution. Additionally, it is uncontested that officials at ROSP have specifically requested religious materials from Jewish organizations, but those organizations have declined to send any materials.

As such, Fletcher was unable to meet the CCS requirements. He thereafter submitted numerous grievances as to his inability to meet the CCS requirements due to lack of available

2

resources at ROSP. On January 20, 2005, Fletcher was again heard by the ICA at ROSP on his request for the Common Fare Diet. The ICA again recommended that he be approved for this diet; their recommendation was then forwarded to the CCS. On March 10, 2005, the CCS approved Fletcher's request and as of March 22, 2005, Fletcher began receiving the Common Fare Diet. However, Fletcher has yet to secure any Jewish literature or videos.

**II.     Analysis**

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

3

## A. First Amendment Claims

Fletcher alleges that defendants' denied him the right to free exercise under the First Amendment by failing to provide him with Jewish literature and videos. It is well established that a prisoner retains his federal constitutional right to freedom of religion and prisoners must be afforded "reasonable" opportunity to practice their religion. Cruz v. Beto, 405 U.S. 319, 322 (1972) However, even when religious freedoms are at issue, prison administrators must be afforded "latitude in the administration of prison affairs." Id. In evaluating a constitutional challenge to prison regulations the court must consider the following factors: 1) whether there is a logical connection between the regulation and a legitimate governmental interest; 2) if the inmate has an alternate means of exercising his religious right; and 3) if accommodating the inmate's right would severely impact other inmates, prison officials, and allocation of prison resources. O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-52 (1987).

Fletcher does not contest the fact that all religious materials available at ROSP have been donated to the institution by various religious organizations. Additionally, Fletcher does not contest the fact that personnel at ROSP have made such requests of Jewish organizations, but said organizations have declined to provide any materials to that institution. Accordingly, Fletcher seems to be arguing that because some religious organizations have donated religious literature and videos to the jail, defendants are obligated to provide Fletcher with equivalent Jewish materials. This argument is without merit. Defendants have not purchased any religious materials for inmate use, all such materials have been donated to the institution. Fletcher does not contest that defendants have made numerous requests from Jewish organizations nor has he provided evidence that defendants have thwarted his personal attempts to secure additional religious materials or that such materials

4

are not otherwise available for purchase from external sources. As such, I find that Fletcher has not alleged any material fact which if true would establish that defendants have acted to prevent him from practicing his religion. Therefore, I find that defendants are entitled to judgement as a matter of law and hereby grant their motion for summary judgment as to this issue.

Additionally, Fletcher alleges that the defendants have denied him the right to free exercise by finding his grievances regarding the delay in his placement on the Common Fare Diet as unfounded. However, Fletcher does not contest the fact that neither defendant was the ultimate authority as to whether or not he could in fact be approved for the Common Fare Diet. Additionally, it is clear that Braxton recommend that Fletcher be placed on the Common Fare Diet following the first ICA hearing. As the delay was ordered by the CCS, a higher prison authority, it is apparent neither defendant was personally responsible for the delay. Thus, there is no basis for liability against either defendant. Therefore, I find that defendants are entitled to judgement as a matter of law and hereby grant their motion for summary judgment as to this issue.

To the extent that Fletcher could amend to name members of the CCS, his claims would still fail. Prisoner officials may restrict an inmate's right to practice his religion to the extent that it is reasonably related to a legitimate penological interest. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Cruz v. Beto, 405 U.S. 319 (1972). In this instance, officials have a reasonable interest in accommodating only those inmates who have a sincere religious belief. United States v. Seeger, 380 U.S. 163, 185 (1965). Accordingly, it is rational to have a procedure which requires prisoners to apply for and demonstrate a sincere religious belief before receiving a dietary change. Additionally, in this instance as Fletcher admits that he had been a practicing Muslim for the preceding thirteen years, prison officials could reasonably require him to demonstrate his sincerity in his newly adopted

5

Jewish faith before approving his dietary change. Therefore, I find that even if Fletcher was granted leave to amend to name proper parties regarding the delay in his receipt of the Common Fare Diet his claims would still fail.[1]

### B. Eighth and Fourteenth Amendment Claims

Fletcher claims that defendants' failure to immediately approve him for the Common Fare Diet and their failure to provide him with Jewish literature and videos constitutes cruel and unusual punishment under the Eighth Amendment. Fletcher further claims that these actions have violated his rights to Due Process and Equal Protection as provided under the Fourteenth Amendment.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). On the other hand, an inmate is not entitled to relief simply

---

[1]Furthermore, it is irrelevant that prior to this hearing Fletcher had been receiving the Common Fare Diet. At the ICA hearing Fletcher stated he was converting to the Jewish faith. As such, he obviously could no longer be considered a Muslim; therefore, his prior approval for the Common Fare Diet due to his religious preference as a Muslim was properly revoked. Accordingly, he then needed to requalify for such status as a person practicing the Jewish faith.

6

because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate not only that the living conditions violated contemporary standards of decency, but also that prison officials acted with deliberate indifference to such conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Moreover, plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). Fletcher has failed to allege any facts which demonstrate that he has sustained a serious or significant injury or is at risk of a future injury due to defendants' actions. Therefore, he has failed to state a constitutional claim under the Eighth Amendment. Accordingly, these claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Additionally, while convicted prisoners relinquish many rights upon being incarcerated, the Due Process Clause of the Fourteenth Amendment mandates procedural safeguards before an inmate may be subject to conditions that pose an atypical hardship in relation to ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995). Fletcher fails to allege facts indicating that he has been deprived of any federally protected liberty interest, he merely claims he was forced to endure a delay before approval for a dietary change was granted and that he has not been provided with adequate religious materials. These allegations do not constitute an atypical hardship sufficient to invoke the protections of the Due Process Clause. Accordingly, I will dismiss these allegations

7

pursuant to § 1915A(b)(1).

To succeed on an equal protections claim, a plaintiff must first demonstrate that he or she has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001). Fletcher alleges that he has been denied equal protection because defendants have provided non-Jewish religious materials to other inmates, but have failed to provide him with Jewish literature. However, Fletcher does not contest the fact that all religious materials have been donated to ROSP, that ROSP officials have made requests to Jewish organizations for Jewish literature, and that all such organizations have declined to provide ROSP with Jewish literature. As the only religious materials available to prisoners at ROSP are those which have been donated to the institution, Fletcher cannot demonstrate that defendants' failure to provide him with Jewish literature is the result of purposeful or intentional discrimination. Additionally, as prison officials are not required to allocate resources equally among all religious groups at the prison and because prison officials have put forth some effort in trying to obtain the requested materials, Fletcher cannot show the current lack of such materials is motivated by a discriminatory purpose. See Cruz v. Beto, 405 U.S. 319, 322 (1972). Therefore, he has failed to state a constitutional claim under the Equal Protection Clause of the Fourteenth Amendment. Accordingly, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## C. RLUIPA Claims

Fletcher further alleges that defendants failed to provide him with religious materials and the Common Fare Diet in violation of the protections afforded under RLUIPA. RLUIPA provides that no government may "impose a substantial burden on the religious exercise of a person residing in an institution," including a prison or jail, unless the government shows that the burden "is in furtherance of a compelling governmental interest," and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. §2000e-1. The defendants argue that they are entitled to qualified immunity as to this claim because they made a reasonable effort to secure religious materials, they lacked authority to grant or deny plaintiff's receipt of the Common Fare Diet, and the allegedly unconstitutional conduct was not of the type that a reasonable person would have been aware.

Fletcher requests both injunctive relief and monetary damages related to his RLUIPA claims. Fletcher specifically requests that defendants be ordered to place him on the Common Fare Diet and begin broadcasting Jewish services and programs on the prison channel. However, as of March 22, 2005, plaintiff signed the Common Fare Agreement and since then has been receiving the Common Fare Diet. As to Fletcher's request regarding the broadcast of Jewish videos, Fletcher has not demonstrated that defendants have acted to place a substantial burden on his effort to practice his religion by failing to broadcast such videos. In fact, defendants have not acted at all to burden his religion, rather they have declined to use prison financial resources to purchase such videos or any other religious materials. As all religious materials, including videos broadcast on the prison channel, have been donated to ROSP, Fletcher cannot demonstrate that a failure to broadcast videos which are not available has substantially burdened his practice of the Jewish faith. Additionally, it is

9

apparent that prison officials have made numerous efforts to secure such materials, accordingly they have made an effort to allow persons of the Jewish faith to further practice their religion while incarcerated. As Fletcher has not demonstrated that defendants have acted to hinder his ability to practice his faith by failing to broadcast unavailable videos or use prison resources to purchase those or any other religious materials, I find that he is not entitled to injunctive relief on this issue.

To the extent that Fletcher requests monetary relief based on past events and not on continuing actions impacting the practice of his religious beliefs, defendants are entitled to qualified immunity. State officials are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated a clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The court "must inquire whether the established contours of the [right] were sufficiently clear at the time of the [alleged violation] to make it plain to reasonable officers that their actions under these particular circumstances violated" plaintiff's constitutional right. Winfield v. Bass, 106 F.3d 525, 531 (4th Cir. 1997) (en banc). See also Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. August 28, 1998). "[T]he exact conduct at issue need not have been held to be unlawful" so long as the unlawfulness of the conduct is manifest under existing authority. Wilson v. Layne, 526 U.S. 603, 614-15 (1999). When a legal question has "been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state," it is clearly established for purposes of qualified immunity. Wallace v. King, 626 F.2d 1157, 1161 (4th Cir.1980);

The United States Supreme Court has previously held a similar statute, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §2000bb, et seq, to be invalid as applied to states and localities. City of Boerne v. Flores, 521 U.S. 507 (1997). After Congress enacted RLUIPA in an

10

attempt to correct the constitutional deficiencies the Supreme Court had found in RFRA, district and circuit courts disagreed as to the new statute's validity as applied to state organizations and facilities, and the issue was just decided by the United States Supreme Court on May 31, 2005. See Cutter v. Wilkenson, 125 S.Ct. 2113 (2005). Given the recent history of controversy over the extent to which Congress can dictate the legal standard under which state prison officials must defend their decisions regarding accommodation of inmates' religious practices, I conclude that the applicability of RLUIPA to state prison officials was not clearly established as of the time of the allegations in this case such that any reasonable officer would have known that defendants' actions violated Fletcher's rights under RLUIPA. Therefore, I find that defendants are entitled to qualified immunity against the RLUIPA claims, and I will dismiss such claims from this action accordingly, pursuant to §1915(e)(2).

### III. Conclusion

Based on the foregoing, I find that there exists no question of material fact regarding plaintiff's free exercise claims and that the defendants are entitled to judgment as a matter of law on this issue. Additionally, I find that plaintiff has failed to state any claims of constitutional magnitude under the Eighth and Fourteenth Amendments. Accordingly, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Finally, I find that defendants are entitled to qualified immunity as to plaintiff's claims brought under RLUIPA. Thus, those claims are dismissed pursuant to § 1915(e)(2).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of

11

the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

ENTER: This 12th of July, 2005.

*/s/ Jackson L. Kiser*
Senior U.S. District Judge